IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL DALY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RESTORE INTEGRATIVE | : | |
| WELLNESS, LLC | : | NO. 23-4035 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                                                   June 6, 2025

Defendant, Restore Integrative Wellness, Inc., seeks summary judgment in this disability discrimination and retaliation case brought by Plaintiff, Daniel Daly. Because I find that Plaintiff has presented sufficient evidence to support his discrimination and retaliation claims and that genuine issues of material fact exist with respect to his hostile work environment claim, I will deny Defendant's motion.

**I.      FACTUAL BACKGROUND**[1]

Defendant hired Plaintiff on or about November 12, 2021, and he worked as a shift supervisor until his resignation on June 16, 2022. See Daly Dep. (Doc. 51-2) at 18, 48, 70-72, 80.[2] Plaintiff has thrombocytopenia-absent radius ("TAR") syndrome, which is characterized by low levels of platelets in the blood and the absence of the long, thin

---

[1]As required at this stage, I review the evidence in the light most favorable to Plaintiff as the non-moving party.

[2]Pinpoint citations to briefing in this court will be to the court's ECF pagination. Depositions attached to the briefing will initially be identified by ECF document number, but the pagination will be to that of the deposition transcript for ease of reference.

bones of the forearms. Daly Dep. at 26, 31. This condition caused Plaintiff daily pain in his arms and difficulty with certain tasks such as moving the step ladder needed to shelve items. Id. at 30-34.[3] James Bonner, Defendant's Human Resources representative, testified that Mr. Daly "performed as well as anybody else," and he had not received any complaints about Mr. Daly's performance. Bonner Dep. at 45 (Doc. 52-1).[4]

At his deposition, Plaintiff described issues he had with coworker Paul Wakeham indicating that Mr. Wakeham "seemed disgruntled if [Plaintiff] asked for assistance or needed some backup support." Daly Dep at 25. Additionally, Plaintiff explained that it would take him extra time to do inventory fulfillment because he had difficulty handling the step ladder and reaching things on higher shelves. Id. at 33. An assistant manager named Pip also made Plaintiff feel like he was not working quickly enough. Id. at 38-39. According to Plaintiff, when he fulfilled orders or inventory, which "took [him] a few seconds longer," he felt that Mr. Wakeham "gave [him] attitude for it." Id. at 41. During her deposition, Rebecca Koval, Defendant's Director of Operations, testified that shortly after Plaintiff began working for Defendant, she became aware of issues that Plaintiff had with Mr. Wakeham. Koval Dep. (Doc. 52-4) at 21, 59-60; see also Harren Dep. at 55-56

---

[3]Defendant does not dispute for present purposes that Plaintiff's TAR is a qualifying disabling condition. Defendant's Statement of Relevant Facts (Doc. 51 at 3-4) ¶ 3.

[4]Although general manager Christopher Harren testified that he put Plaintiff on a written performance improvement plan, Harren Dep. (Doc. 51-7) at 43, there is no evidence of the plan in the record.

(Daly raised issues about Wakeham). Mr. Bonner confirmed that Plaintiff complained that he felt Mr. Wakeham was targeting him. Bonner Dep. at 76.

On or about June 10, 2022, Mr. Wakeham said words to the effect, "I was so mad I almost punched a cripple," referring to Plaintiff. Complaint ¶ 23; see also Daly Dep. at 44-45 (Plaitniff was told Mr. Wakeham said "never in his life he had wanted to hit a cripple"); Doc. 51-6 (unsigned discipline issued to Mr. Wakeham on June 21, 2022, for stating "I never wanted to beat up a cripple").[5] On June 15, 2022, Plaintiff met with the general manager, Christopher Harren, to make him aware of the incident with Mr. Wakeham and complained that he was uncomfortable working with Mr. Wakeham in light of his discriminatory conduct. Complaint ¶ 24; Daly Dep. at 46, 49.[6] Plaintiff conceded that during that conversation, he called Mr. Wakeham "an A-hole." Daly Dep. at 47. In response, Mr. Harren advised Plaintiff that he was being unprofessional and "wrote up the Plaintiff for the incident." Complaint ¶ 26; Daly Dep. 47-48; Bonner Dep. at 77-78. On June 16, 2022, Mr. Harren issued Plaintiff a discipline identified as a final

---

[5]Plaintiff did not hear Mr. Wakeham make the comment, but was told about it by another employee, Billy Miller. Daly Dep. at 44-45. Mr. Bonner confirmed that Mr. Wakeham would refer to Plaintiff as "the cripple" when talking about him, but would not use that word in Plaintiff's company. Bonner Dep. at 68-69. According to Mr. Bonner, Ms. Koval addressed this with Mr. Wakeham and told him not to use the reference publicly. Id. at 71. Ms. Koval denied being involved in Mr. Wakeham's discipline, Koval Dep. at 66-69, and Mr. Harren testified that he was the person who spoke to Mr. Wakeham about the comments. Harren Dep. at 77. The record contains a written warning for Mr. Wakeham but it is not signed by either Mr. Wakeham or a manager. Doc. 51-6.

[6]Plaintiff also emailed Mr. Bonner on June 15, 2022, stating that he wished to discuss negative experiences with a co-manager and negative remarks made by that person about Plaintiff. Doc. 52-3.

warning and he was verbally reprimanded for bringing the incident to the general manager's attention. Daly Dep. at 48; Disciplinary/Performance Counseling Form (Doc. 51-5).[7] Mr. Bonner testified that Defendant employed a progressive disciplinary process, beginning with a conversation or "teaching moment," followed by a verbal warning, four written warnings, and finally termination. Bonner Dep. at 85-88. He could not explain why the progressive disciplinary process was skipped in Mr. Daly's case. Id. at 88-89.[8] Based on the company's handling of the situation, Mr. Daly tendered his resignation to Mr. Harren. Daly Dep. at 48-49.

On October 18, 2023, Plaintiff filed his Complaint, claiming discrimination and retaliation, and alleging that he was subjected to a hostile work environment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. ¶¶ 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 951 et seq. Complaint, Counts 1-4. Before the court is Defendant's motion for summary judgment seeking entry of judgment in its favor on all counts, Doc. 51, and Plaintiff's response in opposition. Doc. 52.

---

[7]The final warning, in addition to referencing Plaintiff's "offensive language when describing an occurrence to your manager" and "[p]rovoking your manager to act unprofessionally," identified abusing break time and unsatisfactory job performance by a pattern of refusing to stay late. Doc. 51-5.

[8]The record contains two prior written warnings issued to Plaintiff dated March 3 and May 4, 2022. Docs. 51-3 & 51-4.

## II.  LEGAL STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[9]  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A), (B).  "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact."  Boykins v. Lucent Techs., Inc., 78 F. Supp.2d 402, 408 (E.D. Pa. 2000).

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. Cnty. of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., 998 F.2d 1224, 1240 (3d Cir. 1993)).  Rather, the court must consider the evidence and all reasonable inferences which may be drawn from it, "in the light most favorable to the non-moving party."  Matsushita Elec. Indus. Co. v.

---

[9]Anderson predated the 2010 Amendment to Rule 56.  However, the change in wording and location within the rule for the summary judgment standard did not alter the standard or caselaw interpretation of the standard.  Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendment.

Zenith Radio Corp., 475 U.S. 574, 487 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). If a conflict arises between the evidence presented by the parties, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in [their] favor." Anderson, 477 U.S. at 255; see also Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 362 (3d Cir. 2008) (in employment discrimination context, "[t]he employer must persuade [the court] that even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor").

## III. DISCUSSION

As previously noted, Plaintiff alleges that Defendant discriminated against him and subjected him to a hostile work environment based on his disability and retaliated against him for his complaints of discrimination. I will address Defendant's arguments in turn.

### A. Discrimination under the ADA and PHRA

Plaintiff's ADA and PHRA claims of disability discrimination are analyzed under the familiar burden-shifting paradigm. In McDonnell Douglas Corporation v. Green, the Supreme Court set forth a three-part burden-shifting framework for the courts to utilize when analyzing employment discrimination claims. 411 U.S. 792, 802-05 (1973). The first prong is a determination of whether the plaintiff has met his or her initial obligation to establish a prima facie case of discrimination. Id. at 802; see also Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 759 (3d Cir. 2004) (applying McDonnell

Douglass to ADA claim); Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015) (applying McDonnell Douglas to PHRA claim).  Satisfying the prima facie elements creates an "inference of unlawful discrimination."  Willis v. UPMC Child.'s Hosp., 808 F.3d 638, 644 (3d Cir. 2015) (citing Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir. 1999)).  Thus, if Plaintiff fails to raise a genuine issue of material fact as to any element of her prima facie case of discrimination, summary judgment in favor of Defendant is warranted.  Hanafy v. Hill Int'l, Inc., 669 F.Supp.3d 419, 433 (E.D. Pa. 2023) (citing Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 580 (3d Cir. 1996)); see also Dorsey v. Pittsburgh Assocs., 90 F. App'x 636, 639 (3d Cir. 2004) (if the plaintiff fails to satisfy the prima facie elements, the court can dispose of the case "without the heavy lifting that is required if a prima facie case is made out").

      If the elements of a prima facie case are met, the second prong of the McDonnell Douglas framework provides the defendant-employer with the opportunity to show that it had legitimate, non-discriminatory reasons for its challenged actions.  411 U.S. at 802; Willis, 808 F.3d at 644.  Finally, in the third prong, the burden shifts back to the plaintiff to show that the defendant's articulated reasons are mere pretext for discrimination.  McDonnell Douglas, 411 U.S. at 804-05; Willis, 808 F.3d at 644-45.

      As noted, the three-part burden-shifting framework applies to Plaintiff's claims under both the ADA and PHRA.  See Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (noting that McDonnell Douglas equally applicable to discrimination claims under the ADA, ADEA, and Title VII); Garcia v. Vertical Screen, 592 F. Supp.3d 409, 418-19 (E.D. Pa. 2022) (applying McDonnell Douglass framework in ADA and PHRA claims of

7

discrimination); Law v. Garden State Tanning, 159 F. Supp.2d 787, 791 n.2 (E.D. Pa. 2001) (same); DeMaio v. Bed, Bath & Beyond of King of Prussia, Inc., Civ. No. 03-5957, 2005 WL 174842, at *3 n.1 (E.D. Pa. Jan. 25, 2005) ("The Pennsylvania Supreme Court has adopted the McDonnell Douglas framework for analysis of PHRA claims.") (citing Allegheny Hous. Auth. v. Commonwealth of Pa. PHRC, 532 A.2d 315, 316-18 (Pa. 1987)).  Thus, the court's analysis of Plaintiff's ADA and PHRA claims will proceed in tandem.

To establish a prima facie case of disability discrimination, the plaintiff must demonstrate that he "(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment action because of that disability."  Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006) (internal quotations and citations omitted); see also Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) (listing same elements for PHRA discrimination claim).

Defendant maintains that "Plaintiff has failed to submit the required evidence to meet his burden of showing that he experienced an adverse employment action related to his disability."  Doc. 51 at 9.  Plaintiff responds that he has met his burden to establish a prima facie case of discrimination and evidence to support that Defendant's proffered justification is pretextual.  Doc. 52 at 11-16.

After reviewing the evidence, including the deposition testimony, I conclude that Plaintiff has provided sufficient evidence to meet the necessary elements of a prima case of disability discrimination.  Defendant does not dispute that Plaintiff has a disability and was qualified for the position, or that Defendant was aware of Plaintiff's disability.

Plaintiff also provides sufficient evidence to support a finding that he was subjected to an adverse employment action when he was disciplined and has pointed to circumstances that raise an inference of discriminatory action.

First, the evidence establishes that, in the early fall of 2022, Plaintiff told Mr. Bonner that he was having trouble reaching things. Bonner Dep. at 36. Mr. Daly informed Mr. Bonner that his frustration was that he could not reach things and that it took him "a while to get things." Id. at 39. When Mr. Bonner suggested to Ms. Koval and Robert Stanley, Chief Operating Officer, that they get a step stool for Mr. Daly, their responses were that "[h]e should be able to do the job like anybody else," and "[t]hat's how he was hired." Bonner Dep. at 36. Ms. Koval rejected the request for a step stool because the products were not kept up high, so there was no need for a stool, and it would be a tripping hazard. Id. at 39-40.[10]

During his deposition, Mr. Daly explained that Mr. Wakeham "gave [him] attitude" because it "took [him] a few seconds longer" to fill orders and do inventory because he had difficulty reaching things on higher shelves. Daly Dep. at 33, 41. In addition, an assistant manager named Pip made Plaintiff feel like he was not working quickly enough. Id. at 38-39. Ms. Koval's suggestion to address the friction between Mssrs. Wakeham and Daly was to "phase [Mr. Daly] off the schedule." Bonner Dep. at 48.

---

[10]Plaintiff's Complaint does not present an ADA claim based on a failure to accommodate. However, this background is relevant to Plaintiff's claim that Defendant had a discriminatory animus in disciplining Plaintiff.

9

Although Defendant argues that Plaintiff's allegation is limited to one comment made by Mr. Wakeham, Doc. 51 at 8, according to Mr. Bonner, this was not an isolated incident and, in fact, Mr. Bonner considered "cripple" to be Mr. Wakeham's nickname for Mr. Daly.  Bonner Dep. at 69.

Moreover, there is evidence that Defendant failed to follow the company's progressive disciplinary procedure in reprimanding and issuing a final warning to Plaintiff for derogatorily referring to another employee when speaking to management. See Bonner Dep. at 85-88 (describing progressive disciplinary procedure), id. at 88-89 (unable to explain the reasoning behind the accelerated discipline); Disciplinary/Performance Counseling Form (Doc. 51-5).[11]  At the same time, the company abided by the disciplinary procedure in issuing an unsigned Disciplinary/Performance Counseling Form and verbal warning to Mr. Wakeham for referring to Plaintiff as a cripple.  See Doc. 51-6 (Disciplinary/Performance Counseling Form issued to Mr. Wakeham); Harren Dep. at 77.

Based on this evidence, Plaintiff has met his prima facie burden to show that he was subjected to an adverse employment action because he was issued discipline and threat of termination in the "final warning."  See Taylor v. SE Pa. Trans. Auth., Civ. No. 23-2140, 2024 WL 3203318, at *24 (E.D. Pa. June 27, 2024) (threat of termination found

---

[11]The Disciplinary/Performance Counseling Form issued to Mr. Daly included the offenses of using offensive language, abusing break time, and a pattern of refusing to stay a little late.  Doc. 51-5.  Mr. Bonner testified that there was no written policy involving break schedules and there was no policy that employees in Mr. Daly's position were required to stay late.  Bonner Dep. at 91-93, 95-97.

sufficient to establish adverse employment action). Plaintiff has also satisfied his burden of demonstrating circumstances that raise an inference of discrimination. See Beck v. Brookville Behav. Health, Inc., Civ. No. 19-1348, 2021 WL 1238918, at *6 (W.D. Pa. Apr. 2, 2021) (supervisor's offensive comments mocking plaintiff's disability raise an inference of discriminatory action); Abrams v. Lightolier Inc., 50 F.3d 1204, 1214 (3d Cir. 1995) ("discriminatory comments by nondecisionmakers, or statements temporally remote from the decision at issue, may properly be used to build a circumstantial case of discrimination"); Lugo v. Walmart, Inc., 616 F. Supp.3d 451, 458-59 (E.D. Pa. 2022) (hostility from store manager in connection with disability sufficient to raise an inference of discrimination).

The burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. Here, Defendant meets its burden by relying on the "write up," which documented transgressions unrelated to Plaintiff's disability. Doc. 51 at 8. The burden shifts back to Plaintiff to

> point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Beck, 2021 WL 1238918, at *6 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted)).

Considering the evidence presented, I conclude that Plaintiff has met his burden to present evidence undermining Defendant's articulated reason for issuing a final warning to Plaintiff. First, the deposition testimony presented a dichotomy in the assessment of

11

Mr. Daly's performance. Mr. Bonner testified that Mr. Daly "performed as well as anybody else," and he had not received any complaints about Mr. Daly's performance. Bonner Dep. at 45. In contrast, Mr. Harren testified that he had put Mr. Daly on a written performance improvement plan, Harren Dep. at 43, although there was no evidence of the plan in the record.

Second, the "final warning" was issued to Mr. Daly the day after he complained about Mr. Wakeham's conduct, and it included the offenses of using offensive language, abusing break time, and a pattern of refusing to stay a little late. Doc. 51-5. However, Mr. Bonner testified that there was no written policy involving break schedules and there was no policy that employees in Mr. Daly's position were required to stay late. Bonner Dep. at 91-93, 95-97. In addition, Mr. Bonner could not explain why the company did not follow the progressive disciplinary procedure in handling Mr. Daly's transgression. Id. at 88-89. Moreover, Mr. Daly was issued a final warning for using a derogatory term to describe Mr. Wakeham to a manager, see Doc. 51-5 (Daly's Disciplinary/Performance Counseling Form), while at the same time, Mr. Wakeham was given an unsigned warning and talked to about referring to Mr. Daly as a cripple, despite the fact that it seems management was aware of Mr. Wakeham's use of this "nickname" for Mr. Daly. See Doc. 51-6 (Mr. Wakeham's unsigned Disciplinary/Performance Counseling Form); Haren Dep. at 77 (Mr. Harren spoke to Mr. Wakeham about the incident); Bonner Dep. at 68-69 (noting Mr. Wakeham's references to Mr. Daly as a cripple).

In light of this evidence, I conclude that a factfinder could reasonably disbelieve the employer's articulated reason for disciplining Mr. Daly. Thus, I will deny

12

Defendant's summary judgment motion with respect to Plaintiff's ADA and PHRA discrimination claims.

### B. Hostile Work Environment

Defendant argues that Plaintiff's citation to "one derogatory comment made between coworkers" is insufficient to survive summary judgment. Doc. 51 at 11. Plaintiff responds that he was "repeatedly subjected to hostile and demeaning conduct" by Mr. Wakeham and other employees, sufficient to establish a hostile work environment. Doc. 52 at 23-24.

To state a claim under the ADA for a hostile work environment, an employee must allege "that [he] suffered intentional discrimination because of [his] disability; the discrimination was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment'; the discrimination detrimentally affected [him]; and it would have detrimentally affected a reasonable person in [his] position." Doe v. Triangle Doughnuts, LLC, 472 F. Supp.3d 115, 132 (E.D. Pa. 2020) (quoting Mercer v. SE Pa. Transit Auth., 26 F. Supp.3d 432, 443 (E.D. Pa. 2014) (in turn quoting Walton v. Mental Health Ass'n of SE Pa., 168 F.3d 661, 667 (3d Cir. 1999)).

The terms "severe" and "pervasive" "represent two distinct types of hostile work environment claims." Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017). "[S]ome harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive," id., and the determination of either is based on the totality of the circumstances rather than individual incidents. See Qin v. Vertex, Inc., 100 F.4th 458,

13

471 (3d Cir. 2024) (courts should "concentrate not on individual incidents, but on the overall scenario") (quoting Caver v. City of Trenton, 420 F.3d 243, 262-63 (3d Cir. 2005)). "In determining whether an environment is hostile or abusive, we must look at numerous factors, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; [and] whether it unreasonably interferes with an employee's work performance.'" Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). Although offending conduct must be either "severe" or "pervasive," courts should take care to not only "parse out the individual incidents," but consider the totality of the conduct in determining "whether the acts that collectively form the continuing violation are severe or pervasive." Mandel v. M&Q Packaging Corp., 706 F.3d 157, 168 (3d Cir. 2013).

Here, material issues of fact bar summary judgment on the claim of a hostile work environment. As discussed above, management was aware of friction between Mssrs. Wakeham and Daly early in Mr. Daly's tenure. Koval Dep. at 21, 59-60; Harren Dep. at 55-56; Bonner Dep. at 76. It is unclear if that friction was rooted in discriminatory animus. According to Mr. Daly, Mr. Wakeham and another manager expressed their frustration with his need for additional time to fill orders and do inventory caused by his difficulty reaching things on higher shelves. Daly Dep. at 33, 38-39, 41. Coupled with Mr. Wakeham's reference to violence -- saying he almost punched a cripple – this evidence is sufficient to defeat summary judgment. Cf. Martin v. Allegheny Airlines, Inc., 126 F. Supp.2d 809, 820-21 (M.D. Pa. 2000) (noting that insensitive comments that

are not severe, physically threatening, or humiliating are insufficient to establish a hostile work environment).[12]

### C. Retaliation

Defendant argues that Plaintiff's retaliation claim fails because he "did not engage in any ADA-protected employee activity," and that Plaintiff's complaint about being called a cripple was "a one-time derogatory remark. . . not connected to any acts of discrimination or harassment pertaining to Plaintiff's disability." Doc. 51 at 10. Plaintiff responds that the facts of his discipline and Mr. Wakeham's discipline support the claim for retaliation. Doc. 52 at 17-22.

In order to establish a prima facie retaliation claim, Plaintiff must establish: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Fogleman, 283 F.3d at 567-68 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)). "To establish the requisite causal connection[,] a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Oden v. SEPTA, 137 F. Supp.3d 778, 791 (E.D. Pa. 2015) (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir.

---

[12]In addition, Mr. Bonner's concession that "cripple" was a nickname that Mr. Wakeham used to refer to Plaintiff several times supports Plaintiff's theory that his treatment was pervasive. Bonner Dep. at 69.

2007)). "[T]here is no hard and fast rule as to whether the conduct in a given case is protected." Fields v. Am. Airlines, Inc., 696 F. Supp.3d 66, 101 (E.D. Pa. 2023) (quoting Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006)). Rather, "the court must evaluate 'the message conveyed' and determine whether it is clear 'from the context of the statement that the employee opposes an unlawful employment practice.'" Id. (quoting Curay-Cramer, 450 F.3d at 135).

If the plaintiff establishes a prima facie case of retaliation, the McDonnell Douglas burden shifts and the employer must provide a legitimate, nonretaliatory reason for the adverse action, followed by the final shift to the Plaintiff to show that the reason given is pretext for unlawful retaliation. Fields, 696 F. Supp.3d at 101 (citing Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003)).

Here, the day after Plaintiff complained to Mr. Harren and Mr. Bonner about Mr. Wakeham referring to him as a cripple and saying "I never wanted to beat up a cripple," he was subjected to accelerated discipline. See Daly Dep. at 45-46, 49; Doc. 52-3 (June 15, 2022 email from Plaintiff to Mr. Bonner); Doc. 51-5 (final warning issued by Mr. Harren on June 16, 2022). At the very least, there are disputed issues of fact as to whether Mr. Wakeham's statement was related to Plaintiff's disability and whether the final warning was motivated by Plaintiff's report of Mr. Wakeham's statement. The Third Circuit has held that "temporal proximity between the protected activity and the termination is [itself] sufficient to establish a causal link." Shellenberger, 318 F.3d at 189 (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 92 (3d Cir. 1997)). Moreover, in the retaliation context, an adverse employment action "is an action that 'well might

have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Mercer, 26 F. Supp.3d at 447 (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. 53, 68 (2006)).  Considering the facts as discussed at length earlier, I conclude that a reasonable factfinder could find that Plaintiff has made out the prima facie case of retaliation.

Although Defendant does not separately state a legitimate, non-retaliatory reason for its actions, I assume for purposes of the motion that it relies on the reasons provided in the "write up" as legitimate, non-discriminatory reasons for the discipline.  For the same reasons explained in the disability discrimination context, see supra at 11-12, I conclude that a reasonable factfinder could disbelieve the employer's articulated reason for disciplining Mr. Daly and conclude that the employer's actions were retaliatory.

## IV. CONCLUSION

Viewed in favor of Plaintiff, he has presented sufficient evidence to support his disability discrimination and retaliation claims to deny Defendant's motion with respect to those claims.  Issues of material fact preclude judgment on the hostile work environment claim.

An appropriate Order follows.